**Lester Laverne KISSEE, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–85–00481–CR.**

Court of Appeals of Texas,
San Antonio.

June 24, 1987.

Rehearing Denied July 16, 1987.

J. Douglas Tinker, Corpus Christi, for appellant.

W.C. Kirkendall, Sean K. Proctor, Seguin, for appellee.

Before CADENA, C.J., and CANTU and REEVES, JJ.

1. *Moore v. State,* 694 S.W.2d 528 (Tex.Crim.App.

## OPINION

CANTU, Justice.

Lester Laverne Kissee, Jr. was indicted by a Guadalupe County Grand Jury for the offense of murder. A jury acquitted him of murder but convicted him of voluntary manslaughter as a lesser included offense. His punishment was assessed by the jury at confinement in the Texas Department of Corrections for ten years.

The evidence viewed in the light most favorable to the jury verdict [1] reflects that appellant was engaged to Karen Thumann, ex-wife of the deceased, Harold Thumann. Karen Thumann married Harold in 1971 and divorced him in mid 1975. Nevertheless, they continued to live together intermittently. Karen Thumann dated other male acquaintances during this period as Harold exhibited his displeasure in various violent means. Appellant was the last of Ms. Thumann's suitors to feel Harold's wrath through systematic phone threats and harassment.

Appellant lived off of highway 123 halfway between Stockdale and Seguin directly across from a drinking establishment known as the Sandy Oaks Tavern where he often frequented and occasionally worked.

On the evening of February 13, 1984, at about 6:00 p.m., appellant arrived at the Sandy Oaks Tavern and immediately recognized Harold's automobile although he had never personally met him. Almost simultaneous with his arrival, Ms. Thumann came out to greet him at the parking lot and to "warn him" that her ex-husband, Harold, was in the tavern and was "looking for him." Appellant then handed Ms. Thumann a pistol which she shoved under the seat of the car.

Appellant entered the tavern and immediately identified Ms. Thumann's ex-husband because she at once began to engage him in animated conversation. Appellant approached Harold and asked him to stop harassing and threatening him and his mother. Harold denied any such conduct whereupon appellant struck Harold on the mouth drawing blood.

1985) (en banc).

Ms. Thumann jumped between the two combatants and prevented further confrontation. Harold, however, insisted that the law be summoned. At the same time he pulled out a knife and flashed it but almost immediately returned it to his pocket.

Appellant then informed the proprietors that he wanted no trouble in the establishment and invited Harold outside. Harold, however, declined to go outside. Nevertheless the proprietors insisted that Harold leave the premises.

Appellant walked outside with Ms. Thumann trailing behind him. Appellant entered his vehicle as Harold exited the tavern and the proprietors hollered that Harold had a knife.

Appellant pointed a .22 caliber rifle out the car window and began shooting. As the first shot hit deceased in the arm the shooting continued in rapid succession until Harold dropped to the ground. Autopsy testimony indicated that Harold was shot six times with entry appearing to be either from behind or from the right side, but in each case with a back to front track.

Appellant testified and raised self-defense. The trial court's jury charge accordingly included an instruction on self-defense. It likewise included a charge on voluntary manslaughter as a lesser included offense.

Appellant's first point of error contends that the trial court erred in instructing on voluntary manslaughter over objection because the evidence allegedly did not raise the lesser included offense to the charge of murder. Reliance is primarily had upon the holding in *Bradley v. State,* 688 S.W.2d 847 (Tex.Crim.App.1985) (en banc).

His second point of error challenges the sufficiency of the evidence to support a conviction for voluntary manslaughter. *Bradley* holds that unless there is some evidence of sudden passion in the case, voluntary manslaughter cannot be considered a lesser included offense of murder.

Still further, the *Bradley* court held:

The fact that the evidence raises the issue of and the court charges on the law of selfdefense ... will not entitle an objecting accused to a charge on voluntary manslaughter unless there is evidence that the killing occurred under the immediate influence of sudden passion arising from an adequate cause. (Citations omitted).

\*　　\*　　\*　　\*　　\*　　\*

By the same token, just because the evidence may raise an issue of self defense does not mean an accused must be subjected to a charge on voluntary manslaughter over objection, where the evidence does not even suggest he was overcome by a sudden passion and therefore acted while incapable of cool reflection.

*Id.* at 852.

Thus it is clear then that if sudden passion is not raised from the evidence a charge on voluntary manslaughter given over protest that the evidence does not raise sudden passion will preclude the application of the rule that proof of a greater offense will sustain a conviction for the lesser included offense.

The *Bradley* opinion is, however, careful to recognize that an appellant may not "lay behind the log" and acquiesce in the giving of an instruction on voluntary manslaughter as a lesser included offense and later claim that the evidence fails to establish all the elements of the offense.

We now examine the complaint lodged by the appellant to the trial court's charge.

The record reflects the following:

THE COURT: Let the record reflect that in Cause Number 84–481, the State of Texas versus Lester Laverne Kissee, Jr., the testimony being concluded, and the Charge has been prepared and presented to the attorneys, and the Court is now in position to hear objections to the Court's charge as it is written.

MR. KIRKENDALL (Prosecutor): The State has no objections, Your Honor.

MR. BENDER (Defense counsel): The Defendant does. The Defendant feels that certainly the State can make an election possibly as to the lesser included offense, but can't have two bites at the

apple. They may make the selection, and should have made that election earlier. He is attempting to go ahead and charge him both for Murder and the lesser included offense of Involuntary Manslaughter. [Sic].

It is my position that he needs to make an election. He can't have two bites at the apple.

\*     \*     \*     \*     \*     \*

MR. BENDER: Note my exception. My objection is that he can make an election, he has to make an election. He can't go ahead and charge them on both Murder and Involuntary Manslaughter [sic] in the same Charge.

THE COURT: The objection will be overruled. Thank you.

 It is clear that appellant's objection to the inclusion of the instruction in the charge was not addressed to the failure of the evidence to support a charge on voluntary manslaughter.[2] Rather appellant sought to have the State elect which offense was to be submitted. The objection at trial cannot, therefore, be logically construed to mean what he now contends on appeal. Error presented on appeal must be the same as the objection raised before the trial court. *Pennington v. State*, 697 S.W.2d 387 (Tex.Crim.App.1985) (en banc).

Moreover under the holding in *Bradley* appellant's failure to complain of the inclusion of the instruction under the proper reasons, to wit, that the evidence did not raise voluntary manslaughter, precludes appellant from now complaining that sudden passion was not raised. We hold that appellant is estopped from now complaining that the evidence failed to establish all the elements of the offense.

In our opinion, the evidence clearly would have supported a conviction for murder. We hold the evidence sufficient to support a conviction for voluntary manslaughter.

Both of appellant's points of error are overruled and the judgment of conviction is affirmed.

---

2. Although appellant's counsel consistently referred to "involuntary manslaughter" it is obvious that the trial court and all parties concerned understood that reference was to "voluntary manslaughter."