

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-11-00414-CR

**NATHAN ANDREW COX,**

                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                    **Appellee**

_____

### From the 66th District Court
### Hill County, Texas
### Trial Court No. 36112

_____

## MEMORANDUM  OPINION

_____

Nathan Andrew Cox appeals from a conviction for aggravated sexual assault of a child, for which he was sentenced to ten years in prison.  TEX. PEN. CODE ANN. § 22.021 (West 2011).  Cox complains that the trial court abused its discretion when it denied his motion to suppress evidence, admitted evidence of an extraneous offense, admitted evidence by a mental health care professional, and allowed the State to recall Cox during the punishment phase of the trial to question him about and admit into evidence

cell phone records that had not been previously disclosed to the defense.  Because we find no reversible error, we affirm the judgment of the trial court.

## *Motion to Suppress Evidence*

Cox complains in his first issue that the trial court abused its discretion by denying his pretrial motion to suppress evidence.  An outcry was made to a physician by F.D., a child then under the age of 14, regarding nude photographs of F.D. taken by Cox with his cell phone.  Shortly before the outcry, Cox had been arrested and charged with the offense of aggravated sexual assault of F.D.  A warrant was issued by a magistrate to search the residence of Cox or to search Cox himself looking for nude photographs of F.D. that would constitute child pornography and any cell phones with cameras in the possession of Cox.

The search warrant affidavit described a residence at 560 HCR 1227 in Whitney, Hill County, Texas as being the residence of Cox and described Cox's physical characteristics.  The affiant was a deputy sheriff who had been employed by Hill County for approximately 19 years at the time of the making of the affidavit, with 18 of those years as an investigator.  The affiant was experienced in and had undergone training in the investigation of child sex offenses and stated that, based on her experience and training, she knew that persons who have illegal sexual intercourse with children commonly take nude photos of their victims, commonly trade or sell those

photos, and use cell phones to take those photos and retain the images on their cell phones for mobility and access to them.

The affidavit set forth that F.D. had initially made an outcry of sexual abuse to her mother who made a report to law enforcement. F.D. stated that she had had consensual sex with Cox the previous summer when she was twelve years old. Approximately a month later, a person listed as "A. Sims, MD of the Children's Advocacy Center" informed the affiant that F.D. had told her that Cox had taken pictures of F.D. without her clothes on using his cell phone, which led the affiant to seek the search warrant.

The search was executed the day after the warrant was issued at 560 HCR 1227 in Whitney, Texas. Cox's father answered the door. Cox was in bed but got up to meet the officers. The officers entered and located a cell phone on the bed in the living room where Cox had been sleeping prior to the officers' arrival. The cell phone was seized and nude photos of F.D. were found on the cell phone, which the State intended to introduce at Cox's trial for aggravated sexual assault.

Cox filed a pretrial motion to suppress, which was denied by the trial court after a hearing. Cox's motion alleged that the warrant did not establish probable cause because the attached affidavit: 1) "lacks sufficient underlying circumstances which would permit the conclusion that the alleged contraband was at the location in which it was claimed;" 2) "fails to state sufficient underlying circumstances to establish the

credibility of the affiant;" 3) "does not specify a connection or nexus with the alleged crime with the premises to be searched;" 4) that the magistrate did not have a substantial basis for determining that the contraband would be found in a particular place; and 5) that the warrant was facially deficient because it did not particularize the things to be seized. At the hearing on the motion to suppress, Cox's argument was that there was no nexus in the affidavit to connect the residence that was searched to the cell phone that was seized in Cox's possession.

Cox complains in his first issue that the trial court abused its discretion by denying his motion to suppress evidence because of an insufficient connection between the suspected place and child pornography at that location. Cox further complains that there were no facts in the affidavit as to why the affiant believed that Cox would be at that address at the time of the search or that it is even the address of Cox. Cox argues that the affidavit does not establish why the evidence sought was reasonably connected to the suspected place.

Next, Cox argues in that same issue that the information on which the affidavit was based was stale because the pictures had been taken twelve to eighteen months prior to the affidavit. Further, he complains that there was no showing of the reliability of the information or individuals used as the basis for the affidavit; i.e. that there was no showing of reliability of the hearsay allegations provided by the non-affiant, A. Sims, MD.

*Preservation of Error*

At the hearing on the motion to suppress, Cox did not argue that there was no showing that the residence was Cox's residence, that the information was stale, or that the statement of A. Sims, MD constituted hearsay or was otherwise unreliable. To preserve a complaint for appellate review, a defendant must raise the complaint to the trial judge by a timely request, objection or motion that specifically identifies the grounds for the ruling he seeks. TEX. R. APP. P. 33.1(a)(1)(A). A defendant's appellate contention must comport with the specific objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). An objection grounded on one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). The reviewing court will not consider errors, even of constitutional magnitude, not called to the trial court's attention. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Cox has failed to preserve the above complaints for appellate review because his contentions on appeal do not comport with his arguments at the suppression hearing. *See* TEX. R. APP. P. 33.1(a)(1)(A). We will limit our review to the issue raised by Cox at the hearing on the motion to suppress that there was no nexus between the crime of the possession of child pornography to the address of 560 HCR 1227, Whitney, Hill County, Texas set forth in the affidavit attached to the search warrant.

*Standard of Review for Motion to Suppress*

Ordinarily, a trial court's ruling on a motion to suppress is reviewed under a bifurcated standard, giving almost total deference to the trial court's findings of fact but reviewing conclusions of law de novo. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). However, when ruling on a motion to suppress evidence obtained pursuant to a search warrant, a trial court is limited to the four corners of the affidavit supporting the warrant and thus makes no factual or credibility determinations. *Id*. Our review of a trial court's ruling on a motion to suppress evidence requires us to be highly deferential to a magistrate's decision to issue a search warrant, reflecting the constitutional preference that searches be conducted pursuant to a warrant. *McLain*, 337 S.W.3d at 271; *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007).

We must determine whether the magistrate had a substantial basis for concluding that probable cause existed. *State v. Jordan*, 342 S.W.3d 565, 569 (Tex. Crim. App. 2011) (*quoting Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). Probable cause exists when, considering the totality of the circumstances, there is a "fair probability that . . . evidence will be found at the specified location." *Rodriguez*, 232 S.W.3d at 60 (*internal quotations omitted*). While our review is limited to the four corners of the affidavit, we interpret the affidavit in a "commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in

doubt we defer to all reasonable inferences that the magistrate could have made." *Id*. at 61.

Cox's argument at the hearing on the motion to suppress was that there was no nexus between the address in the warrant and the crime of child pornography. He further contended that it was necessary for the warrant to describe criminal activity occurring at the premises to be searched. Cox further argued that the nexus needed would have been satisfied with a statement that the cell phone would likely have been located at the residence of Cox, but that the magistrate was not allowed to infer that link.

The search warrant stated that based on the affiant's knowledge and experience individuals who engage in illegal sexual intercourse will use cell phones to take photographs of their victims and store those images on the phone for easy access and mobility. Further, the affidavit stated that F.D. had made a statement that she and Cox had engaged in sexual intercourse when she was twelve years old and later told A. Sims, MD that Cox had used his cell phone to take photographs of her without her clothes on. The warrant sought the ability to search the residence or the person of Cox for cell phones with cameras. The only thing missing would have been a statement that Cox kept the cell phone at his residence while he was there. However, we believe that the magistrate could have reasonably inferred that an individual would keep their cell phone on or near their person at all times including when they were at their residence.

We do not find that the search warrant was defective in this manner. We overrule issue one.

## *Admission of Evidence*

Cox complains in his second issue that the trial court abused its discretion by admitting evidence of an extraneous offense. In his third issue, Cox complains that the trial court abused its discretion by allowing a witness to testify as an expert. In his fourth issue, Cox complains that the trial court abused its discretion by allowing the State to question him on cross-examination using cell phone records that had not been provided to the defense prior to trial.

When reviewing a trial court's ruling admitting evidence, we apply an abuse of discretion standard of review. *Casey v. State*, 215 S. W.3d 870, 879 (Tex. Crim. App. 2007). The court does not abuse its discretion as long as its decision to admit evidence falls within the zone of reasonable disagreement. *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

### *Extraneous Offenses*

Cox complains that the trial court abused its discretion by allowing F.D. to testify that Cox had inappropriately touched her beginning when she was five or six. At trial, Cox objected to the introduction of the earlier conduct as being inadmissible pursuant to rules 401, 403, and 404(b) of the Rules of Evidence. *See* TEX. R. EVID. 401, 403, 404(b). In his brief to this Court, Cox cites those rules, however, his argument is limited to

stating that the allegation was remote and unreliable from ten years prior and was revealed by F.D. for the first time only shortly before the trial. Because of this, Cox contends that the allegation was not proved beyond a reasonable doubt. We note that the testimony of a child victim is sufficient to support a conviction for aggravated sexual assault or indecency with a child and corroboration is not required. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2005); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005). We see no distinction, and Cox has not shown any, that would demonstrate that F.D.'s testimony was not sufficient to establish the extraneous offense that he had inappropriately touched her as a young child beyond a reasonable doubt.

Additionally, the allegation that F.D. had been touched inappropriately by Cox at approximately age five was also testified to without objection by F.D.'s counselor. The admission of evidence is harmless where the same evidence came in elsewhere without objection. *Lane v. State*, 151 S.W.3d 188, 192-93 (Tex. Crim. App. 2004); *see also Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) ("[E]rroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'"). We overrule issue two.

*Expert Testimony*

In his third issue Cox complains that the trial court abused its discretion by allowing the testimony of F.D.'s counselor as an expert witness regarding stressors that F.D. had experienced and how those stressors could be attributed to sexual assault. The

trial court conducted a gatekeeping hearing outside the presence of the jury to determine the admissibility of the testimony of a licensed professional counselor, Amanda Vieregg, who had been seeing F.D. for approximately six months prior to the trial providing psychotherapy services to F.D.

Vieregg had a master's degree in psychology and had been a licensed professional counselor for approximately 20 years at the time of trial. For the first seven years she had worked with children and adolescents at Klara's Center for Children and Families. Since that time Vieregg had been in private practice, specializing in children and adolescents who have been sexually or physically abused. Vieregg's continuing education was focused on children and adolescents, and she had a reputation in the community for working with children who had been sexually abused, which often comprised her entire caseload. Vieregg had testified in court on many occasions previously as an expert witness.

Vieregg began seeing F.D. every other week in February of 2011 leading up to the time of trial in August of that year. F.D. came to Vieregg because she was experiencing intense and pervasive thoughts about a sexual relationship she had been in with an older male from approximately age five to age twelve or thirteen. This was impacting her grades at school and her behavior, and was interfering with her ability to concentrate on her schoolwork. F.D. also showed signs of post-traumatic stress

disorder, anxiety, and depression, which Vieregg also attributed to the sexual relationship.

F.D. had told Vieregg that her mother had used drugs previously but was currently not a drug user, although Vieregg did not know that it was methamphetamine that her mother abused. F.D. denied any instances of physical abuse by her mother, but had told Vieregg that she had been responsible for the care of her siblings quite a bit because of her mother's being in and out of the home due to drug use. F.D. was approximately six months pregnant at the time of trial as well, although Vieregg did not attribute stress surrounding the pregnancy to the issues described above because F.D. was not pregnant when she began therapy and expressed her problems. Vieregg acknowledged that some of those factors could contribute to her anxiety, but was of the opinion that the sexual abuse was the primary cause of F.D.'s issues.

At the conclusion of the gatekeeping hearing, Cox objected to the testimony of Vieregg because he claimed that her testimony was not reliable or credible because she did not consider other factors in her opinion as to the cause of F.D.'s problems and that the State had not met its burden under *Daubert*. *See generally*, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).

The trial court overruled Cox's objection and allowed Vieregg to testify as an expert. The trial court also granted the State's objection disallowing testimony about

F.D.'s current pregnancy as being irrelevant to the offense for which Cox was on trial, which had occurred approximately two years prior to the trial.

On appeal, Cox complains that the trial court abused its discretion by failing to require the State to elicit testimony regarding Vieregg's background or credentials in the scientific field or theory she was propounding; there was no testimony regarding what she was basing her scientific observations on outside of having previously testified; she did not explain the reliability of psychotherapy or the underlying science as to how the stressor factors she had observed in F.D. were reliably linked to actual sexual abuse.

In support of this argument Cox cites to *Hernandez v. State*, 116 S.W.3d 26 (Tex. Crim. App. 2003), in which the Court of Criminal Appeals held that "[o]nce a scientific principle is generally accepted in the pertinent professional community and has been accepted in a sufficient number of trial courts through adversarial *Daubert/Kelly* hearings, subsequent courts may take judicial notice of the scientific validity of that scientific theory based upon the process, materials, and evidence produced in those prior hearings." However, *Hernandez* has been limited to instances involving "hard" sciences, not "soft" sciences such as psychology. *See Morris v. State*, 361 S.W.3d 649, 655 (Tex. Crim. App. 2011).

In determining the admissibility of expert testimony, the rules of evidence require a trial judge to make three separate inquiries, all of which must be met before

admitting that testimony: "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006) (*citing* TEX. R. EVID. 104(a), 702, 401, & 402). These inquiries are commonly referred to as qualification, reliability, and relevance, respectively. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006).

On appeal Cox does not attack Vieregg's qualifications as an expert or the relevance of her testimony; therefore, we will limit our analysis to the reliability question. For assessing the reliability of expert testimony, we analyze the admissibility of expert testimony regarding behavioral characteristics of child sexual assault victims under *Nenno*'s framework concerning fields of study outside the hard sciences. *Morris*, 361 S.W.3d 649, 654 (citing *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998), *overruled in part on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999)). The *Nenno* framework consists of three questions: (1) whether the field of expertise is a legitimate one; (2) whether the subject matter of the testimony is within the scope of that field; and (3) whether the testimony properly relies upon or utilizes the principles involved in the field. *Nenno*, 970 S.W.2d at 561.

Behavioral characteristics common to child victims of abuse has been held to be a legitimate area of questioning. *See Duckett v. State*, 797 S.W.3d 906, 920 (Tex. Crim. App.

1990), *overruled in part on other grounds by Cohn v. State*, 849 S.W.3d 817, 819 (Tex. Crim. App. 1993); *see also Gonzales v. State*, 4 S.W.3d 406, 417 (Tex. App.—Waco 1999, no pet.). The subject matter of Vieregg's testimony was within the field of expertise of providing psychotherapy to children and her testimony described how she utilized the principles in the field based on her significant experience and training. Cox states that Vieregg was unaware of other stressors in F.D.'s life, which based on our review of the record, was not accurate. Vieregg testified that she knew of other factors present in F.D.'s life and that they could have an emotional impact on F.D., such as her mother's past drug use, F.D.'s current pregnancy, and the in-and-out parenting of her mother. The trial court did not abuse its discretion by admitting the testimony. We overrule issue three.

### *Discovery Violation*

Cox complains that the trial court erred by allowing the State to recall him to testify on rebuttal regarding cell phone records that had not been provided by the State prior to trial because his attorney might not have allowed him to testify had the State's possession of and the content of the records been made known. During direct examination Cox testified that he did not have regular contact with F.D. in the month leading up to his arrest; however, the cell phone records demonstrated that Cox had communicated with F.D. on a regular basis during that same time period that Cox claimed to have no contact. Cox contends that the trial court had entered a standing pretrial order for discovery that would have required the disclosure of the records.

The State argues that although Cox had filed a motion for discovery, it was never set for hearing and there was no discovery order in place requiring the production of the records. Further, the State contends that the failure to produce them was not willful because they were not received by the State until the day before they were admitted. The record before us does not show that a discovery order was entered by the trial court. Absent an order requiring discovery, there is no error in the admission of evidence not previously disclosed by the State. *See, generally*, TEX. CODE CRIM. PROC. ANN. art. 39.14 (West 2005).

The State sought to introduce the records during its cross-examination of Cox to impeach his testimony that he had not had contact with F.D. during the month of his arrest. The cell phone records show multiple, lengthy phone calls and also text messages between F.D.'s cell phone and Cox's cell phone. Cox's counsel objected to the records at that time because he had not seen them previously and on the basis of surprise and the trial court allowed Cox until lunch to look at the records. After the lunch break, Cox objected to the State being allowed to present the records during cross-examination rather than during rebuttal, at which time Cox believed the records would be admissible for impeachment purposes. Cox further objected on the basis of surprise at that time, but did not ask for a continuance or further postponement. Cox's counsel argued that had he known of the State's intent to use the records he might not have called Cox to testify.

"It is well settled that the proper procedure when alleging surprise due to violation of a trial court's order for discovery is to object or ask for a postponement or continuance of the trial." *Duff-Smith v. State*, 685 S.W.2d 26, 33 (Tex. Crim. App. 1985). Failure to do so results in a waiver of any error based on surprise or violation of a discovery order. *Smith v. State*, 779 S.W.2d 417, 431 (Tex. Crim. App. 1989); *Duff-Smith*, 685 S.W.2d at 33; *McQueen v. State*, 984 S.W.2d 712, 718 (Tex. App.—Texarkana 1998, no pet.) (*citing Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982)); *see Hall v. State*, 283 S.W.3d 137, 169 (Tex. App.—Austin 2009, pet. ref'd); *Williams v. State*, 995 S.W.2d 754, 762 (Tex. App.—San Antonio 1999, no pet.). Because Cox did not request a continuance, even if there had been a discovery order entered, any alleged error based on surprise was waived. We overrule issue four.

### Conclusion

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
 Justice Davis, and
 Justice Scoggins
Affirmed
Opinion delivered and filed March 28, 2013
Do not publish
[CR25]